## MOSSMAN YARNELLE COMPANY v. FEE.

[No. 10,826. Filed May 20, 1921.]

1. EXECUTORS AND ADMINISTRATORS.—*Decedent's Debts.—Right of Administrator to Sell Land.—Res Adjudicata.—*Where, on petition of an administrator, the court ordered the sale of an interest in land alleged to have been the property of de-

cedent, the right of the administrator to sell such interest became *res adjudicata* as between the parties to the court's order and their privies.   p. 604.

2.   EXECUTORS AND ADMINISTRATORS.—*Order for Sale of Realty. — Matters    Adjudicated.— One-Third   Interest   of   Widow.—* Where an administrator filed a petition to sell an undivided two-thirds interests in land to pay debts of decedent, who, it was alleged, was the owner of the entire tract, an order for the sale of such two-thirds interests was not an adjudication as between the widow of decedent and her children and their privies as to the other third, the widow's right as to the one-third not being in issue, and the widow and children not being adversary parties.   pp. 604, 606.

3.   JUDGMENT.—*Conclusiveness.—Parties.—Issues.—*The plea of *res adjudicata* is not available to parties in an action unless the judgment set up was rendered upon issues between them, it being essential that there must have been a controversy between the parties, the question in which was or might, within the issues framed, have been completely adjudicated.   p. 606.

4.   JUDGMENT.—*Conclusiveness.—Matters Between Codefendants.* —A court cannot decree between codefendants when neither pleading nor proof shows any controversy or adverse interest between them.   p. 609.

5.   JUDGMENT.—*Matters   Concluded.—Issues.—*To   constitute   a bar to further proceedings, a judgment in a prior action must have been an actual judgment upon the same issue.   p. 609.

From Dekalb Circuit Court; *Howard W. Mountz*, Special Judge.

Action by Electa Fee against Mossman Yarnelle Company.   From a judgment for plaintiff, the defendant appeals.   *Reversed.*

*P. V. Hoffman*, for appellant.
*Edgar W. Atkinson,* for appellee.

MCMAHAN, J.—Action by appellee against appellant to quiet title to certain real estate.   It appears from the special finding of facts that in March, 1899, John Lowe, Sr., being the owner of a certain forty-acre tract of land entered into a contract with Marshall Lowe to the effect that the latter should have said land upon con-

dition that he would pay $75 rent per annum therefor until John's estate was settled, when John's administrator should make a deed to Marshall therefor. Marshall Lowe entered into possession of the real estate under this contract and remained in possession thereunder and performed his part of the contract until March, 1905, when he died intestate leaving as his only heirs his widow, Electa Lowe, now Electa Fee, and two children James M. and Freida Lowe. In August, 1905, John Lowe, Sr. and his wife executed to appellee and said James M. and Freida Lowe a quitclaim deed for said real estate, conveying to appellee the undivided one-third thereof during her widowhood, with the remainder therein and the remaining two-thirds to said children, which deed was duly recorded. In March, 1910, letters of administration on the estate of Marshall Lowe were issued by the Dekalb Circuit Court to Norman T. Jackson, who filed a petition to sell the undivided two-thirds of said real estate as the property of Marshall Lowe, alleging that all of said real estate belonged to said Marshall at the time of his death. Appellee and said two children were made defendants in said petition and served with process. James and Freida being minors a guardian *ad litem* having been appointed for them, he filed an answer in general denial. On final hearing the court ordered said administrator to sell the undivided two-thirds of said real estate, and the administrator after due notice sold the same to appellee for $1,500. Appellee was the wife of Marshall Lowe when the contract was entered into, and remained his wife until his death. She married William Fee in December, 1907. In September, 1917, appellant began an action in the Dekalb Circuit Court against James M. Lowe on account, and caused a writ of attachment to be issued and levied upon an undivided one-sixth of said real estate as the property of James M. Lowe. Such fur-

ther proceedings were had as resulted in a judgment in attachment being rendered in favor of appellant directing the sale of said undivided one-sixth of said real estate to satisfy appellant's claim. Appellant purchased said one-sixth interest at sheriff's sale.

·On these facts the court stated its conclusions of law in favor of appellee, and entered a decree quieting her title.

Did the court err in its conclusions of law? Appellee through the deed from John Lowe, Sr., became the owner during her widowhood of an undivided one-third of the land in controversy. Her title under this deed terminated on her remarriage in 1907. When the administrator filed his petition to sell the undivided two-thirds of the real estate to pay the debts of Marshall Lowe, appellee had no title to any part of the land. The title at that time was in her two children, and under the law was not subject to sale. The court however, erroneously ordered the undivided two-thirds sold, and as between the parties to that proceedings and their privies the right of the administrator to sell such interest is *res adjudicata* and as to them, appellee by virtue of her purchase at the administrator's sale, became the owner in fee of an undivided two-thirds of said land. Such sale however, gave her no title to the remaining one-third. The title to that remained in the two children, unless the decree of the court in ordering the two-thirds sold had the effect of depriving them of their title to the one-third which was not ordered sold.

Appellee contends that since the administrator, in order to procure an order to sell the real estate, was required to allege and prove that the real estate was owned by Marshall Lowe at his death, the decree of the court ordering the property sold was an adjudication upon that question, and was

also an adjudication that she as the widow of the decedent was the owner of one-third of the land, and that when she purchased two-thirds of the administrator she became the owner of the entire tract.   In other words she contends that her right to one-third was in issue in the proceedings to sell and was determined in her favor, and is therefore *res adjudicata* as to her children and their privies.   She relies upon *Armstrong* v. *Hufty* (1899), 156 Ind. 606, 55 N. E. 443, 60 N. E. 1080, to support her contention.

The facts in that case are that Joseph Sampson died testate, the owner of certain land.   He devised his land to his widow, whether for life or in fee was not determined and is immaterial.   After the widow's death her administrator filed a petition to sell the whole of the real estate for the purpose of paying the debts of her estate.   The three children of the widow and Joseph were made defendants.   It was alleged in the petition that the widow owned the real estate in fee, and that it was necessary to sell it to pay the debts of her estate. There was a decree ordering the land sold.   Appellee Hufty became the purchaser at the administrator's sale. After paying all the debts there was a balance of over $600 for distribution among the three children, which they received and still retained.   Hufty later commenced an action against said children to quiet his title. They defended, and contended that under the will of their father, their mother took only a life estate or at least an estate less than a fee-simple, and that the administrator's deed conveyed no title.   The court however held that the children were concluded by the judgment ordering the land sold, and that they could not later assert that she did not own a fee at the time of her death or that it was not liable to be sold to pay her debts.

The holding in that case was that as between the pur-

chaser at the administrator's sale and the defendants in the proceedings to sell, the question as to whether the widow of Joseph Sampson took a fee-simple title was *res adjudicata*. On authority of that case we hold in the instant case that as against her two children and their privies the deed from the administrator conveyed to appellee the fee to an undivided two-thirds of the land in question. It was the administrator's deed that conveyed title to appellee. The decree of the court ordering the property sold did not purport to give her any title to the land. That was not the purpose of the proceedings. The question as to whether she had any interest in the property or what, if any interest, she had in it was not put in issue. Appellee and her children were mere codefendants. They were not adversary parties. There was no issue of any kind between them. There was not and could not under the issues have been any judgment fixing their rights as between each other. The undivided one-third was not mentioned in the petition of the administrator to sell. Neither was it mentioned in the decree of the court ordering the sale of the two-thirds. And as said in *Beveridge* v. *New York, etc., R. Co.* (1889), 112 N. Y. 1, 19 N. E. 489, 2 L. R. A. 648: "The plea of *res adjudicata* is not available to parties in an action, unless the judgment set up was rendered upon issues between them. There must have been a controversy between the parties, the question in which was or might, within the issues framed, have been completely adjudicated."

In discussing the question as to who and when a party can rely upon the doctrine of *res adjudicata*, the Supreme Court in *Jones* v. *Vert* (1889), 121 Ind. 140, 22 N. E. 882, 16 Am. St. 379, said: "The party who invokes the doctrine of former adjudication must be one who tendered to the other an issue to which the latter could have demurred, or pleaded.

*Harvey* v. *Osborn* (1877), 55 Ind. 535. Where one of the defendants makes an issue with the plaintiff, a judgment settling the issue so made in favor of the defendant does not determine the question between the codefendants. *Leaman* v. *Sample* (1883), 91 Ind. 236; *Gipson* v. *Ogden* (1885), 100 Ind. 20. The thing demanded must be the same, the demand must be founded upon the same cause of action, the demand must be between the same parties and found by them against each other in the same quality. Wells, *Res Adjudicata* §14.   *   *   * The defendants in the foreclosure suit might possibly have put the validity of the vendor's lien in issue by filing a cross-complaint. *Woolery* v. *Grayson* (1887), 110 Ind. 149, 10 N. E. 935. This does not appear to have been done, and we can not presume that it was. There does not seem to have been any issue tendered or made, between the defendants. In short, there does not appear to have been any suit pending between them. Any judgment, therefore, that the court may have pronounced, which purported to settle any title, or claims, between the defendants, was *coram non judice,* and void."

The rule as announced in this case was recognized and applied in *Whitesell* v. *Strickler* (1906), 167 Ind. 602, 78 N. E. 845, 119 Am. St. 524, where the court, quoting from the Jones case said: "The party who invokes the doctrine of former adjudication must be one who tendered to the other an issue to which the latter could have demurred or pleaded," and in *Maynard* v. *Waidlick* (1901), 156 Ind. 562, 60 N. E. 348, where the court said: "As her husband had no cross-complaint or other pleading asking to quiet his title to said real estate against her, this part of the decree was without issue, and for that reason was not binding on her." And also in *Finley* v. *Cathcart* (1897), 149 Ind. 470, 63 Am. St. 292, where it was said: "Unless it can be said that

the issue raised alone on the petition in the partition suit was sufficient to warrant the court in determining the question of title between the appellant and appellee then there was no other issue, as we have seen, under which it could have been decided."

There was no suit pending between appellee and her children. Any judgment, therefore, that the court may have pronounced in the action of the administrator, which purported to settle any title or claim between appellee and her children, was *coram non judice,* and void.

The same rule is recognized and applied in *Koelsch* v. *Mixer* (1894), 52 Ohio St. 207, 39 N. E. 417, where it is said : "It is not enough that an issue may have been joined between the obligee and the defendant, as to the liability of the latter on the bond. Whatever that issue may have been, it is not an issue between himself and his co-defendants, the plaintiff in this action, and could not therefore conclude the latter; though parties to the suit they were not such in an adversary character, being simply co-defendants to the suit on the bond. * * * It is the general rule that parties to a judgment are not bound by it, in a subsequent controversy between each other, unless they are adversary parties in the original action."

"The only parties concluded by a decree are adversary parties, and the matter determined must be in issue between them. Parties on the same side of a foreclosure suit are not concluded, as against each other, if no issue between them was presented and adjudicated. Where nothing has been litigated as between codefendants in a chancery suit, the decree is not evidence in favor of either party against the other." *Gouwens* v. *Gouwens* (1906), 222 Ill. 223, 78 N. E. 597, 113 Am. St. 395. To the same effect is *Duncan* v. *Holcomb* (1866), 26 Ind. 378, where it is said: "Codefendants may or may not

settle their respective rights as between themselves, in the suit against them."

While it is the constant practice of courts to enter decrees and judgments between codefendants upon proper proof and under pleadings between plaintiffs and defendants, which bring the respective rights and claims of such codefendants between themselves under the judicial cognizance, we know of no case holding that a court may decree between codefendants when neither pleading nor proof shows any controversy or adverse interest between them. Nor has appellee referred us to any case which does assert that doctrine.

There being no judgment as to the identical matter in controversy—i. e., whether, as between appellee and her children, appellee owned an undivided one-third of the land—the former proceeding are no bar to appellant's recovery. To constitute such a bar to further proceedings, there must have been an actual judgment upon the same issue. It is the policy of the law: "That there should be an end to every litigation, and when an issue has been once actually determined, it should not again be contested by the same adversaries, or those claiming under them. * * * The general rule is intended to prevent litigation, and preserve peace. * * * But without such actual determination on the merits, evidenced by a record which can not be contradicted, the reason of the rule does not apply." *Webb* v. *Buckelew* (1880), 82 N. Y. 555. The judgment is not a bar to further proceedings unless it is between the same parties and touching on the same subject-matter. "A judgment concludes the parties, as to the grounds covered by it, and the facts necessary to uphold it. It is a familiar rule that whatever was in issue was determined in the former trial, but in the

judgment itself must be found the determination of the issues involved, and whatever was properly in issue in the pleadings will be presumed to have been adjudicated. But, where a judgment itself discloses that a part of the subject-matter of the controversy was not determined, there can no estoppel arise." *Long* v. *Eisenbeis* (1899), 21 Wash. 23, 56 Pac. 933.

The particular controversy involved in the instant case was not necessarily tried and determined in the proceedings to sell. The order to sell could have been made without deciding the extent of appellee's title, if any, in the land sold. The judgment ordering part of the land sold is not therefore conclusive in the case under consideration. *Washington, etc., Co.* v. *Sickles* (1866), 72 U. S. 580, 18 L. Ed. 550; *Burnie* v. *Seaton* (1887), 111 Ind. 56, 12 N. E. 101; *Felton* v. *Smith* (1882), 88 Ind. 149, 45 Am. Rep. 454.

Our attention has been called to the case of *Young* v. *Stevens* (1902), 28 Ind. App. 654, 63 N. E. 721, as being an authority supporting the contention of appellee. We do not so understand that case. The facts in that case were, that one Barefoot had sued Stevens, Roth, and Young upon a note and to set aside as fraudulent a mortgage which Stevens had executed to Kerlin. Roth and Young defaulted. Kerlin filed a cross-complaint against Stevens and Barefoot asking that his mortgage be foreclosed. There was a judgment in favor of Barefoot against Stevens, Roth, and Young on the note, while Kerlin secured a judgment and decree in his favor foreclosing his mortgage against Stevens and Barefoot. Roth and Young, being sureties for Stevens, paid the Barefoot judgment, not the note, and then began an action against Stevens and Kerlin to recover the amount which they had so paid and to set aside the Kerlin mortgage as being fraudulent as to them as creditors of Stevens. The court held that, since Young and Roth

"must claim through and under the Barefoot judgment," not under or through the note, they had no greater right than Barefoot had, and that since Barefoot was bound by the decree which was rendered against him on his complaint to have the mortgage declared fraudulent, Young and Roth who were claiming under that decree, were likewise bound by it. In the instant case the appellant is not claiming under or through the former proceedings, as Young and Roth were in the case just cited. The thing demanded in this action is not the same as was demanded in the petition of the administrator to sell, nor is the demand founded upon the same cause of action.

We, therefore, hold that appellee was the owner of an undivided two-thirds of the real estate described in her complaint but that she has no title to the undivided one-sixth which has been sold to appellant by the sheriff pursuant to the judgment of the court in the attachment proceedings. The judgment is therefore reversed, with direction to the court to restate its conclusions of law and to render a decree consistent with this opinion.

Nichols, J., dissents.

### DISSENTING OPINION.

NICHOLS, J.—I do not concur in the majority opinion. It will be observed that in the administrator's petition for sale, it was averred that his decedent was the owner of all the real estate involved at the time of his death. This was a necessary averment under the statute. Without such an averment and a finding of the court to that effect, there would have been no valid order for the sale of the undivided two-thirds thereof; for, as there was a widow, under the statute she owned the undivided one-third of the real estate of which her husband died seized, and this was not subject to sale to pay debts. *Hutchinson* v. *Lemcke* (1886), 107 Ind. 121, 8 N. E. 71.

The title to the whole tract was therefore necessarily involved here. Unless the administrator's decedent owned the whole tract, the administrator could not be authorized to sell the undivided two-thirds. The court having found, as it necessarily had to do to sustain the order of sale, that the administrator's decedent owned the whole tract at the time of his death, the court by such finding in effect found that the widow, who was a party to the action, owned the undivided one-third. It is sufficient to sustain a plea of *res adjudicata* if the fact here involved was essential to the finding and order of the court in the first action. This rule is substantially stated in Herman, Estoppel and Res Adjudicata §246. The same author in §247 again gives us the rule that "the estoppel of a judgment extends beyond what appears on its face; it includes every allegation made by the plaintiff and denied by the defendant." The children, James M. and Freida Lowe, together with the widow, were made parties to the proceeding to sell, and by their guardian *ad litem* answered in general denial. This put in issue the averment of the petition that the administrator's decedent was the owner of the whole tract of real estate involved at the time of his death, and necessarily, as a result of such issue under the law, the right of the widow to the undivided one-third thereof.

. So far as title is concerned, in order to contest the administrator's right to sell the two-thirds, the defendants James M. and Frieda Lowe, must of necessity, contest their father's title to the whole tract at the time of his death, and this involved a contest of the mother's right to the one-third as widow. Under the general denial which was pleaded in their behalf they could have put in evidence the deed from the grandfather, and any other matter that would have shown their title other than as heirs, and that would have defeated the title of

the administrator's decedent. The evidence in the former trial is not in the record, and the presumption is that the finding and order of the trial court was based upon sufficient evidence. At the time of his death, appellee and her husband were in possession of the real estate involved, under a contract of purchase and for a deed under certain conditions with which he had complied up to the time of his death. His equitable interest in the land could and may have been confirmed to his heirs by subsequent adjustment, all of which may have been before the court. Under the statute, she was entitled to one-third of the lands in which her husband had an equitable interest, at the time of his death, and the court by its finding and decree gives her this interest and nothing more. She was not deprived of this interest by the deed executed by her father-in-law.

Had the heirs aforesaid prevailed in their contest, they would have established not only their title to the undivided two-thirds as against the administrator, but also their title to the undivided one-third here involved. Having failed to so contest, or failing in their contest, they are now precluded. The case of *Armstrong* v. *Hufty* (1899), 156 Ind. 606, 55 N. E. 443, 60 N. E. 1080, mentioned and discussed in the majority opinion, reading on pp. 613, 614, discusses the general principle as to *res adjudicata.* We may here remark that what is said with reference to such heirs being precluded from maintaining any subsequent action, was said independent of any fact with reference to their having received in final settlement any distributive share of their mother's estate.

It has been many times held that a judgment is an adjudication upon all the matters of law and fact which are essential to support it. *St. Joseph Union Depot Co.* v. *Chicago, etc., Co.* (1898), 89 Fed. 648, 32 C. C. A. 284; *Perry* v. *King* (1898), 114 Ala. 533, 23 South. 783;

*State, ex rel. Hospes* v. *Branch* (1896), 113 Mo. 592, 36 S. W. 226, 56 Am. St. 533; *Daniel* v. *Gum* (1897), (Tenn.) 45 S. W. 468; *State* v. *Ortiz* (1906), 99 Tex. 475, 90 S. W. 1084; *Kelly* v. *Hamblen* (1900), 98 Va. 383, 36 S. E. 491; *Bodkin* v. *Arnold* (1898), 45 W. Va. 90, 30 S. E. 154; *Coutant* v. *Feaks* (1834), (N. Y.) 2 Edw. Ch. 330; *Willis* v. *Tozer* (1895), 44 S. C. 1, 21 S. E. 617; *Corrothers* v. *Sargent* (1882), 20 W. Va. 351. This principle is clearly stated in the case of *Armstrong* v. *Hufty, supra,* where on p. 616, the court says: "If there is an issue in such a case, or a fact indispensably necessary to be found in order to entitle the plaintiff to recover, which, if it exists, bars every right of such person, whether as an heir or otherwise, then a finding and judgment against such person concludes him, not only from asserting any right as the heir of the person alleged, but from every right whether it grows out of such heirship or not."

The majority opinion cites the case of *Leaman* v. *Sample* (1883), 91 Ind. 236, on the principle that where one of the defendants made an issue with the plaintiff, the judgment settling the issue so made in favor of such defendant does not determine the question between the codefendants. In that case one of two sureties presented the question of his suretyship asking certain relief, while the other surety did not file such an answer or ask such relief. There was an adjudication in favor of the first surety and granting him the relief, while no relief was granted to the second surety. Suppose that both sureties had filed respective answers praying for the same kind of relief, and that the court by the special finding had found that they were both sureties and had granted the relief for which they prayed; Could they have thereafter been heard to litigate the question of the suretyship as between themselves? In the case at bar, the widow and the children were before the court

by due process, and the children answered in general denial, thereby presenting the question as to the ownership of the land, two-thirds of which the administrator sought to sell, and the court, in finding that the administrator's decedent owned the land thereby found for the widow as to the undivided one-third, and against the children as to such interest. For the widow to litigate this question again with her children or their creditors when it had been settled by the necessary finding in the previous action upon which a final judgment and order of sale had been based, seems to me to be a useless proceeding.

The case of *Whitesell* v. *Strickler* (1906), 167 Ind. 602, 78 N. E. 845, 119 Am. St. 524, was an action by the widow, against the administrator of her husband's estate and her children, to set aside her election to take under the law on the ground of fraud. There was a plea of *res adjudicata*, the basis of which was an action by the administrator to sell the undivided two-thirds of the husband's real estate, in which it was alleged that the widow had elected to take under the law, which she admitted. In that proceeding, however, she did not present the question of fraud, and it was held that the plea of *res adjudicata* could not prevail for the reason that the parties were not the same and the subject-matter of the action was entirely different. The case is clearly distinguished from the instant case, as I think each and every one of the cases cited by the majority opinion may be, by showing that the circumstances of each of the cases were different from those here involved. In this case there could have been no valid order of sale of the undivided two-thirds of the real estate involved without a finding following the averment that the whole tract belonged to the decedent, which is equivalent to a decision that the widow owned the undivided one-third. The order of sale here involved of necessity involves the title

to the whole tract, which includes the widow's share. It is argued in the majority opinion that there was no issue between appellee and her children in the former action, and therefore the question of title to the undivided one-third not sold was not determined. The case of *Young* v. *Stevens* - (1902), 28 Ind. App. 654, 63 N. E. 721, announces the principle which, as it seems to me, meets the argument of the majority opinion. In that case the payee of a note sued the principal and sureties thereon, and also included in this action as defendant, the holder of a mortgage which was executed by the principal, and sought to have the mortgage declared fraudulent and void as against the principal's creditors, including the payee of the note. The sureties were defaulted. The holder of the mortgage answered and filed a cross-complaint against the principal and the payee. The sureties were not made parties to such cross-complaint. There was therefore no issue between the sureties and the holder of the mortgage. Such mortgage was held valid and foreclosed on the cross-complaint. Afterward the sureties paid the note, and in a subsequent action for the recovery of the amount paid by them sought to have the mortgage declared fraudulent as to creditors. It was held in that case that the sureties were bound by the adjudication in the former action. The principle here involved is directly in point. As it seems to me, under the state of the record in the first proceeding, appellee's children could not have maintained a subsequent action against her for title to the one-third, and if they were concluded, the judgment which concluded them must also conclude their privies, one of whom is the appellant herein. In my opinion the judgment should be affirmed and I therefore dissent from the majority opinion.